UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TOTAL QUALITY LOGISTICS,
LLC,

            Plaintiff,                       Case No. 1:26-cv-455

      v.                              JUDGE DOUGLAS R. COLE

TRAFFIC TECH, INC., et al.,

            Defendant.

## OPINION AND ORDER

Defendants Traffic Tech, Inc. and Colby Evan Swain removed this case from the Clermont County Court of Common Pleas on May 6, 2026. (Not. of Removal, Doc. 1). That removal brought along a pending Motion for Temporary Restraining Order (Doc. 3). Plaintiff Total Quality Logistics (TQL) has now moved to remand the case to state court, (*see* Doc. 4), based on a stipulation purporting to limit the value of the relief it seeks to "less than seventy-five thousand dollars ($75,000), inclusive of compensatory damages, punitive damages, costs, attorneys' fees, and the fair market value of any injunctive relief," (Doc. 5, #134). Based on the Court's review of the various filings, though, that stipulation does not deprive the Court of subject matter jurisdiction. Accordingly, the Court **DENIES** TQL's Motion to Remand (Doc. 4).

## BACKGROUND

As it has many times before, TQL is suing a former employee (Swain), and his new employer (Traffic Tech) for allegedly breaching a noncompetition agreement. (Compl., Doc. 2, #76); *see, e.g.*, *Total Quality Logistics, LLC v. Franklin*, No 1:19-cv-

26, 2020 WL 5051418 (S.D. Ohio Aug. 27, 2020); *Total Quality Logistics, LLC v. All. Shippers, Inc.*, No. 1:19-cv-1052, 2020 WL 3166672 (S.D. Ohio June 15, 2020); *Total Quality Logistics, LLC v. Reed Transp. Servs.*, 1:19-cv-182, 2019 WL 6723837 (S.D. Ohio Dec. 11, 2019); *Total Quality Logistics, LLC v. Johnson*, No. 1:19-cv-850, 2019 WL 5540682 (S.D. Ohio Oct. 28, 2019); *Total Quality Logistics, LLC v. Summit Logistics Grp., LLC*, No. 1:20-cv-519, 2020 WL 6075712 (S.D. Ohio Oct. 14, 2020) [hereinafter *Summit Logistics Grp. I*]; *Total Quality Logistics, LLC v. Summit Logistics Grp., LLC*, 606 F. Supp. 3d 743 (S.D. Ohio 2022) [hereinafter *Summit Logistics Grp. II*]; *Total Quality Logistics, LLC v. Traffic Tech., Inc.*, No. 1:22-cv-304, 2022 WL 2948945 (S.D. Ohio July 26, 2022).

But while the case is currently in federal court, it did not start there. Rather, TQL sued the Defendants in the Clermont County Court of Common Pleas. On May 6, 2026, though, the Defendants jointly removed the action to this Court, citing federal question and diversity jurisdiction. (Doc. 1, #2–3). TQL now seeks remand. (Doc. 4).

The facts underlying the dispute are relatively straightforward. TQL employed Swain from May 16, 2022, until May 28, 2025. (Doc. 2, #78). Before starting at TQL, Swain signed a Confidentiality Agreement and Restrictive Covenant (the Agreement). (*Id.*; *see id.* at #88–95 (agreement and restrictive covenant)). The Agreement required Swain to refrain from working for or associating with any of TQL's competitors, soliciting TQL's customers or carriers, or soliciting or recruiting other TQL employees. (*Id.* at #78–79, 92). It also barred Swain from disclosing or

using TQL's confidential trade secrets and other proprietary information. (*Id.* at #79, 92–93).

According to TQL, Swain held "progressively important" positions during his three years on the job. (*Id.* at #79). Those positions included "Logistics Account Executive Trainee, Logistics Account Executive, Saturday Group Leader, and Senior Logistics Account Executive." (*Id.*). Swain became a "primary point of contact" for certain of TQL's customers, thus giving Swain intimate knowledge of trade secret and other confidential information. (*Id.*).

Since Swain left TQL in May 2025, TQL has learned that Swain took a job at Traffic Tech "that is the same or similar to the position he held at TQL." (*Id.*). Swain's relationship with Traffic Tech allegedly began before the one-year noncompete period had expired. (*Id.*). Additionally, Swain has allegedly siphoned off certain of TQL's customers. (*Id.*) So, TQL says, Swain is in breach. (*Id.*).

But that's not the only contractual breach TQL alleges. In addition, TQL says that, by hiring Swain, Traffic Tech has breached a settlement agreement that concluded a 2016 round of litigation between TQL and Traffic Tech based on similar allegations. (*Id.* at #80; *see id.* at #96–101 (settlement agreement)). The settlement agreement bars Traffic Tech from "knowingly solicit[ing], hir[ing], or employ[ing] any current or former TQL employee during the duration of any non-compete agreement the employee has with TQL." (*Id.* at #80, 99). So, TQL contends, Traffic Tech is in breach, too. (*Id.* at #80).

3

TQL asserts four counts based on these allegations: (1) a breach of contract claim against Swain, (2) a misappropriation of trade secrets claim against Swain and Traffic Tech, (3) a breach of contract claim against Traffic Tech, and (4) a tortious interference with contract claim against Traffic Tech. (*Id.* at #81–85). TQL seeks both injunctive relief and damages. (*Id.* at #85–86).

The value of that relief forms the basis for much of the parties' current dispute regarding the appropriateness of remand—at least on the diversity front. TQL has filed a stipulation that caps the value of the relief that it "seeks" and "will accept" in this action at $75,000. (Doc. 5, #134). That cap includes all "compensatory damages, punitive damages, costs, attorneys' fees, and the fair market value of any injunctive relief." (*Id.*). The stipulation provides that it is "unequivocal and binding on TQL." (*Id.* at #135). TQL now seeks a remand to state court based on that stipulation, as it has "clarified" that the value of the relief sought falls below the diversity threshold. (Doc. 4).

Defendants, though, say remand is not appropriate. (*See* Resp., Doc. 7). They argue that TQL's requested injunctive relief, as described in the complaint, necessarily places the amount in controversy above the $75,000 threshold. (*Id.* at #147). That means that TQL's post-removal stipulation can only be "properly understood [as] a *reduction*, rather than [a] *clarification*, of the amount in controversy." (*Id.* (emphasis in original)). And a post-removal reduction in the amount sought, they say, does not warrant remand. (*Id.* at #147–48).

TQL has replied. (Doc. 11). So the matter is ripe for review.

4

## LEGAL STANDARD

When a defendant removes an action from state court to federal court, the federal court has jurisdiction only if it would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Here, Defendants claim that this matter falls within the Court's original jurisdiction under 28 U.S.C. § 1332(a), that is, the diversity jurisdiction.[1] For that to be true, two conditions must be met: (1) the parties must be completely diverse; and (2) the amount in controversy must exceed $75,000. *Id.*

Timing also matters. District courts must "measure[] all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004). In the removal context, this means that courts analyze their jurisdiction "at the time of removal, as that is when the case first appears in federal court." *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 568 (7th Cir. 2022) (citation omitted).

The removing defendant must establish by a preponderance of the evidence that § 1332's amount-in-controversy requirement is satisfied. *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 470 (6th Cir. 2019) (citation omitted). To be clear, though, this does not require a defendant to prove, "to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement." *Id.* at

---

[1] In their notice of removal, Defendants also contend that the action is removable under the Court's federal question jurisdiction. Specifically, they contend that the claims TQL asserted in the complaint necessarily implicate the Sherman Act. (*See* Doc. 1, #11). They have not further developed that argument in their opposition to remand, though. And, in any event, as the Court finds that Defendants' diversity argument forecloses remand, the Court declines to consider whether federal question jurisdiction would have supported removal, as well.

471 (emphasis omitted). Rather, a defendant need only show that it is "more likely than not" that the plaintiff's claims exceed the jurisdictional threshold. *Id.* at 470.

## LAW AND ANALYSIS

The parties' primary dispute revolves around the value of the injunctive relief TQL requested in its state court complaint. Defendants contend that the value of the injunctive relief alone amounts to some $400,000. (Doc. 7, #144, 147, 150). TQL, on the other hand, argues that its stipulation *includes* the value of the injunctive relief sought in its complaint. (Doc. 4, #125; Doc. 11, #220). Therefore, TQL says, its motion to remand is controlled by the well-established rule that an unequivocal, binding stipulation that clarifies (rather than reduces) the jurisdictional amount for the "first time" can divest a federal court of subject-matter jurisdiction. (Doc. 4, #128; Doc. 11, #220).

But Defendants, anticipating this argument, have a response. They say that, because the value of the injunctive relief sought in the complaint *necessarily* exceeds $75,000, TQL's post-removal effort to "clarify" the amount in controversy (including the value of the injunctive relief) must be a "*reduction*, not a clarification." (Doc. 7, #155 (emphasis in original)). So the question for the Court is whether TQL's stipulation is better characterized as (1) a permissible first-time clarification of the amount in controversy (which would deprive the Court of subject matter jurisdiction), or (2) an impermissible post-removal *reduction* of the amount in controversy (which would not). Ultimately, for the reasons further described below, the Court concludes it is the latter.

**A.    Plaintiffs in Cases Removed from Ohio State Court Can Compel Remand by Filing a Post-Removal Stipulation that Clarifies, but Does Not Reduce, the Amount in Controversy.**

Before turning to the amount in controversy, the Court first sets the stage. As the Court has previously explained, a plaintiff is generally "the master of his or her own complaint." *Summit Logistics Grp. II*, 606 F. Supp. 3d at 748. So, a plaintiff who wants to keep a case in state court can typically sue for less than the jurisdictional amount, thereby precluding removal "even if the parties are diverse." *Id.* (first citing *Heyman*, 781 F. App'x at 469; and then citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938)).

But some states, including Ohio, make things difficult for a plaintiff who elects to pursue that course. Under the Ohio civil rules, a plaintiff seeking "more than twenty-five thousand dollars … shall so state in the pleading but shall not specify in the demand for judgment the amount of recovery sought." Ohio Civ. R. 8(A). And even if a plaintiff ignores that rule and includes a cap on the alleged damages in the complaint, "such limitations are not enforceable under Ohio law." *Summit Logistics Grp. II*, 606 F. Supp. 3d at 748.

Because any cap the complaint contains is unenforceable as a matter of state law, an Ohio state-court defendant can remove an action, "even if the complaint purports to limit relief to less than $75,000, so long as the defendant can assert in good faith in its removal papers that the amount in controversy in fact exceeds the jurisdictional threshold." *Id.*; *see also* 28 U.S.C. § 1446(c)(2)(A) (permitting a notice of removal to "assert the amount in controversy if the initial pleading seeks"

7

"nonmonetary relief" or a "money judgment, but the State practice … does not permit demand for a specific sum").

If the defendant does so, then a plaintiff seeking remand to state court has two options. "First, the plaintiff can respond to the removal by stipulating in the federal court action that the amount in controversy is less than the jurisdictional amount. So long as the stipulation is clear that the plaintiff is not seeking, and will not accept, more than $75,000, that stipulation is binding, and thus deprives the federal court of subject matter jurisdiction." *Summit Logistics Grp. I*, 2020 WL 6075712, at \*3 (citing *Heyman*, 781 F. App'x at 469–70). "Second, the plaintiff can move for remand, disputing the allegation in the removal papers regarding the jurisdictional amount." *Id.*

TQL elected to pursue the former course. It filed a stipulation. And that stipulation is, according to its terms, "unequivocal and binding." (Doc. 5, #135). Moreover, it covers the value of "any injunctive relief." (*Id.* at #134).

That all sounds good. But there is an important proviso on a party's ability to use a stipulation of the type referenced above. The stipulation must serve only to clarify damages; it cannot reduce them. *St. Paul Mercury Indem. Co.*, 303 U.S. at 292. In other words, because Ohio law makes it impossible for a plaintiff to use the complaint to limit the plaintiff's state court request in an enforceable manner to an amount less than $75,000, federal courts give the plaintiff one crack, post-removal, to make clear that the plaintiff had been pursuing less than $75,000 in recovery all

along. That is, the plaintiff can clarify in federal court what they had been seeking in state court.

But if the plaintiff is instead *reducing* the amount they were seeking, then things change. *See id.* Recall that post-removal changes to either the amount in controversy or citizenship do not affect jurisdiction—it is the state of those things at the time of removal that matters. *Perez*, 31 F.4th at 568. And here, Defendants argue that "the stipulation is properly understood to be a reduction, rather than [a] clarification, of the amount in controversy" because "TQL seeks full enforcement of the non-compete," which, Defendants say, the Court should value at $400,000. (Doc. 7, #147, 150 (emphasis omitted)). According to Defendants, "for the injunctive relief to be worth less than $75,000, the injunction would necessarily need to be less than the full enforcement of Swain's Agreement—which is what TQL initial[ly] sought." (*Id.* at #190). By Defendants' count, "a fair market value of only $75,000 would only last approximately 2.25 months." (*Id.*). And that's not what TQL sought in its complaint. (*Id.*). So, the argument goes, "TQL's stipulation (as applied to the injunctive relief requests) is a post-hoc *reduction* to avoid federal jurisdiction." (*Id.* (emphasis in original)).

**B.  Defendants Have Shown that the Value of TQL's Injunctive Relief Likely Exceeds $75,000.**

To assess Defendants' argument, then, the Court must determine the value of the injunctive relief TQL sought in its state court complaint. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple*

*Advert. Comm'n*, 432 U.S. 333, 347 (1977) (citations omitted). Generally, "the amount in controversy should be determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007) (quoting *Woodmen of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro*, 129 F. App'x 194, 195–96 (6th Cir. 2005)).

"When a business is threatened … by unfair competition … the stated rule is that the amount in controversy in injunctive or declaratory relief actions is the difference between the value of the business if left unregulated, or it not being subjected to the improper competition, or with the covenant, and its value if the regulation is enforced, or competition continues, or the covenant is invoked." 14B Wright & Miller's Federal Practice & Procedure § 3710.1 (5th ed. 2026). More narrowly, "[i]n cases in which the plaintiff seeks to protect a business, the relevant amount is the loss in profits to the plaintiff as a result of the regulation or alleged unfair competition or breach of covenant." *Id*. Because that delta cannot be measured with "precision," "the court usually will look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination." *Id*.

For example, in *Basicomputer Corporation v. Scott*—a case with many factual similarities to this one—Basicomputer sued five former employees when they left Basicomputer to work for "a Sears, Roebuck & Co. computer sales facility." 973 F.2d 507, 509 (6th Cir. 1992). In so doing, the employees violated a non-compete covenant,

10

as well as "a covenant not to disclose proprietary information, confidential information, or trade secrets, including the identity of customers and the prices at which Basic sells its goods and services." *Id.* Basic sued for damages and injunctive relief, invoking the district court's diversity jurisdiction. *Id.* On an interlocutory appeal following a preliminary injunction, the Sixth Circuit affirmed the district court's amount-in-controversy determination. *Id.* at 509–10. Each defendant "generated sales worth well over $100,000 per year while they worked for Basic." *Id.* at 510. Additionally, "Basic alleged that it suffered severe competitive losses from the mass departure of the defendants to Sears and from the defendants' alleged attempts to lure Basic's clients to Sears." *Id.* Because there was "no legal certainty that Basic's claims are worth less than $50,000 [the jurisdictional amount at the time]," it concluded that the district court had diversity jurisdiction over the dispute. *Id.*

So too here. Swain avers that, to the best of his recollection, he generated "approximately $500,000 in gross profit" in 2024, his final full calendar year. (Swain Decl., Doc. 7-1, #159). And in the twelve months immediately before his termination—May 2024 through May 2025—he states that he "generated approximately $400,000 in gross profit." (*Id.* at #160). Moreover, like in *Basicomputer*, TQL alleges that Swain has "successfully diverted business from [TQL's] customers to Traffic Tech." (Doc. 2, #79). So Swain says the case strongly supports his argument that the value TQL sought through the injunction here was on the order of $400,000.

The Court is not necessarily persuaded that the $400,000 figure should be used as a direct proxy for that value. But that is largely irrelevant. The real question is

11

whether the value exceeds $75,000. And using *Basicomputer*'s approach to valuation as a guide, the Court concludes that Defendants have carried their burden of showing by a preponderance of the evidence that, whatever the precise number may be, it is north of that amount. *See Heyman*, 781 F. App'x at 470.

That dooms TQL's request for remand. The value of the injunction it sought, in and of itself, *necessarily* exceeds the jurisdictional threshold. So its post-removal stipulation must amount to a post-removal reduction, rather than a clarification.

That said, TQL's reliance on certain cases from the Southern District of Ohio warrants a response. (*See* Doc. 4, #128 n.1; Doc. 11, #221–22). For example, TQL cites this Court's decision in *Total Quality Logistics, LLC v. Lankford*, 1:23-cv-303, 2023 WL 4423820 (S.D. Ohio July 10, 2023). (Doc. 11, #221). There, much like here, defendants in one of TQL's numerous lawsuits argued "that the stipulation is a reduction rather than a clarification." *Lankford*, 2023 WL 4423820, at *3. One of the arguments defendants made in support was that "a review of the Complaint easily confirms that TQL's requested recovery exceeds $75,000 in value." *Id.* Specifically, defendants noted that TQL's trade secrets claim "could result in damages over $100,000 and that TQL has in similar matters demanded and received $60,000 in attorneys' fees alone." *Id.* Additionally, TQL sought "injunctive relief whose value, while difficult to assess, can be substantial." *Id.*

While acknowledging the plausibility of the defendants' argument, the Court ultimately rejected it:

> As a matter of first principles, that argument sounds reasonable enough. After all, the facts are what matter at removal. And at that early stage,

12

the state-court complaint alone can evidence those facts. So, if a fair reading of the complaint suggests that it demands relief greater than $75,000, one could argue any post-removal stipulation is an improper reduction rather than a clarification that would support remand.

As a matter of Sixth Circuit precedent, though, that argument doesn't work. According to the Sixth Circuit, where state law prevents a plaintiff from including a binding statement in the state-court complaint that the plaintiff seeks and will accept less than the jurisdictional amount, the plaintiff can offer a stipulation to that fact post-removal in federal court. And so long as it is the plaintiff's first *post-removal* statement of damages and contravenes no other express statement in the state court case, that suffices. In short, in such circumstances courts do not [] look past that stipulation to make their own assessment of the value sought in the removed action.

And that makes some sense. After all, even if a plaintiff has been *harmed* in an amount greater than $75,000, they may choose to *recover* only $74,999. That is what it means to be the "master of the complaint." It is just that states like Ohio make it impossible for a plaintiff to evince that intent in their state-court complaint. Against that backdrop, a binding stipulation in federal court represents the plaintiff's first opportunity to so clarify. And of course, that's the path TQL took here.

*Id.* at *4 (emphasis in original) (citations omitted).

True, that passage offers some support for TQL's position here. Specifically, the Court said in *Lankford* that courts "do not [] look past th[e] stipulation to make their own assessment of the value," and arguably that is what the Court is doing here. *Id.* But that language in *Lankford* needs to be read in context. As the next paragraph goes on to explain, the mere fact that someone has been harmed by an amount more than $75,000 does not necessarily mean that they are seeking the entirety of that as damages. When it comes to damages, a plaintiff, as the "master of the complaint," can demand less than $75,000, even if they have been harmed in a greater amount; it's just that Ohio law precludes them from saying so in the complaint. But here, TQL, as the "master of the complaint," sought *full* enforcement of its agreement with Swain

13

through an injunction, and the value of that relief necessarily exceeds $75,000. And while *Lankford* acknowledged that TQL also sought "injunctive relief" whose value might be "substantial," the defendants in *Lankford* did not present the Court with the argument that Defendants have presented here. So the Court had no factual basis in *Lankford* for concluding by a preponderance of the evidence that the injunction there likely had a value in excess of $75,000.

Second, in *Summit Logistics Group I*, this Court acknowledged that "a party can include language in its stipulation specifying that the stipulated maximum amount it will accept includes 'the fair value of any injunctive relief' that may be awarded." 2020 WL 6075712, at *5 (collecting cases). In such a case, "the value of the injunctive relief is included as one aspect of the capped damages." *Id.* "For example, a determination that the injunctive relief has a value of $25,000 would mean that TQL would not accept more than $50,000 in other forms of monetary relief. By capping the *total* relief, such stipulations settle the matter and preclude jurisdiction." *Id.* (emphasis in original).

Again, the Court can see some support for TQL's position in these words. But the Court's example is telling. The Court *assumed* "a determination that the injunctive relief has a value of $25,000," and then built the rest of the hypothetical around that assumption. *Id.* And in cases where the value of the injunctive relief is less than the jurisdictional threshold, that example works. But the assumption does not hold here. For the reasons already explained, Defendants have shown that the value of TQL's proposed injunctive relief alone is likely to exceed $75,000. So any

post-removal effort to cap that relief at $75,000 necessarily amounts to a reduction, rather than a clarification, of the amount in controversy.

Finally, TQL points to *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, where another judge in this district rejected the argument that Traffic Tech offers here. 2022 WL 2948945, at *3–4. There, as here, Traffic Tech argued that the value of the injunctive relief alone satisfied the amount-in-controversy requirement and "provided estimates regarding the total value of the relief sought in the Complaint." *Id.* The court disagreed, holding that TQL's stipulation rendered such considerations "irrelevant." *Id.* at *4. The parties dispute whether this case was correctly decided. (*See* Doc. 7, #156–57; Doc. 11, #222–23). For the reasons already explained, though, the Court agrees with Traffic Tech. A stipulation cannot "clarify" that a plaintiff's complaint seeks less than the jurisdictional amount when the value of the relief sought in that complaint *necessarily* exceeds the jurisdictional threshold.

To be sure, the Court is not saying that post-removal stipulations cannot, as a general matter, cover the value of injunctive relief. As noted, the Court has expressly stated otherwise in the past, and nothing in this decision indicates a departure from those earlier statements. *See, e.g.*, *Summits Logistics Grp. I*, 2020 WL 6075712, at *5. But where the value of the injunctive relief, as requested in the complaint, necessarily exceeds the jurisdictional threshold, a post-removal stipulation covering that relief is not a ticket back to state court.[2]

---

[2] If TQL had included a disclaimer in its state court complaint asserting that it was not seeking injunctive relief to the full extent set forth in his "Agreement with TQL," (Doc. 2, #85), but rather only for such limited period of time as warranted by its desire to recover

## CONCLUSION

For the above reasons, the Court **DENIES** TQL's Motion to Remand (Doc. 4).

Defendants shall file a response to TQL's Motion for Temporary Restraining Order

no later than July 20, 2026, and TQL shall file a reply no later than July 27, 2026.

**SO ORDERED.**

July 6, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

limited damages, or something of that sort, things may be different. But a party cannot seek
a unit of recovery (an injunction) that in and of itself has a value above $75,000, and then
disclaim any intent to receive that amount

16